UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALEX J N,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 2:20-cv-233-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.    <u>ISSUES FOR REVIEW</u>

A. Did the ALJ harmfully err by failing to properly consider the medical evidence?

B. Did the ALJ harmfully err by failing to properly evaluate the Plaintiff's statements about his conditions and symptoms?

    C. Should the ALJ re-evaluate the residual functional capacity (RFC) and re-assess whether Plaintiff is disabled?

## II. DISCUSSION

Plaintiff filed his Title II application on November 30, 2017 and alleged a disability onset date of November 15, 2014. AR 15. The ALJ determined that the relevant period of the application would begin on January 7, 2016 and this is not challenged on appeal. AR 15, Dkt. 13. Plaintiff's date last insured is December 31, 2020. AR 15.

Plaintiff is a veteran, and the record indicates his back pain started when he was in the military; he entered the Marine Corps in January 2006 – then, after his honorable discharge in January 2010, the back pain became much worse in 2014 as a result of a car accident. AR 44-49, 54, 440-442, 760-770. The ALJ held a hearing on August 20, 2019. AR 15. On September 4, 2019, the ALJ found that plaintiff had the following severe impairments: "spinal impairment(s), mood disorder(s) (including post-traumatic stress disorder), and substance use disorder". AR 18. The ALJ conducted the analysis of plaintiff's Residual Functional Capacity (RFC), found plaintiff could not perform any of his past relevant work at step four but at step five, the ALJ determined plaintiff could perform future work, and therefore plaintiff was not disabled. AR 29. Plaintiff seeks review of the ALJ's September 4, 2019 decision.

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

1  proof at step five to show that a significant number of jobs that the claimant can perform
2  exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20
3  C.F.R. § 416.920(e).
4      The Court will uphold an ALJ's decision unless: (1) the decision is based on legal
5  error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*,
6  874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a
7  reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.
8  Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305
9  U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*
10     The Court must consider the administrative record as a whole. *Garrison v.
11 Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that
12 supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court
13 considers in its review only the reasons the ALJ identified and may not affirm for a
14 different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative
15 law require us to review the ALJ's decision based on the reasoning and actual findings
16 offered by the ALJ—not post hoc rationalizations that attempt to intuit what the
17 adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26
18 (9th Cir. 2009) (citations omitted).
19     If the ALJ's decision is based on a rational interpretation of conflicting evidence,
20 the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533
21 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence
22 presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1  1984) (citation omitted) (emphasis in original). The ALJ must only explain why

2  "significant probative evidence has been rejected." *Id.*

3      A.  Medical evidence

4      The ALJ must provide "clear and convincing" reasons for rejecting the

5  uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*,

6  871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

7  1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is

8  contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In

9  either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth

10 Circuit law, opinions from non-examining medical sources that contradict a treating

11 physician's opinion will trigger the "specific and legitimate reasons" standard of review.

12 *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (requiring only specific

13 and legitimate reasons where treating doctor's opinion was "contradicted by the findings

14 of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to

15 some extent, the opinion of Dr. Ruggeri, the hand specialist").

16     "Determining whether inconsistencies are material (or are in fact inconsistencies

17 at all) and whether certain factors are relevant to discount the opinions of [treating or

18 examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec.*

19 *Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853,

20 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion).

21 An ALJ need not accept a medical opinion that is brief and conclusory when the ALJ

22 faces conflicting evidence regarding the claimant's condition. *Tonapetyan v. Halter*, 242

23 F.3d 1144, 1149 (9th Cir. 2001).

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1. Ms. Fischer

Plaintiff argues that Ms. Debra M. Fischer, ARNP, Ph.D., was an acceptable medical source whose opinion was discounted by the ALJ because: (1) Ms. Fischer failed to fill out the medical form herself – Kathleen Palik, R.N. filled it out instead; (2) Ms. Fischer was not familiar with plaintiff's conditions or limitations; and (3) Ms. Fischer's opinions were not supported by objective evidence. Dkt. 13 at 7.

As to the first reason, the ALJ's decision is not supported by the record. Ms. Fischer reviewed and signed the form dated January 18, 2018 (AR 804-805) and there are notes from examinations during this time, signed by Nurse Palik and endorsed by ARNP Fischer. AR 804-805, 1061-1064.

Regarding the second reason, this is also unsupported by the record. The record shows that ARNP Fischer was providing care, and supervising care, for plaintiff's conditions. *Id.*; see also, AR 752-756 (assessment by ARNP Fischer dated April 27, 2017, considering plaintiff's back pain and difficulty obtaining treatment because he was homeless at that time).

The third reason given by the ALJ is supported. The MRI results show that even though plaintiff reported his pain from a back condition had worsened during the time of Ms. Fischer's assessment, the objective medical record shows relatively mild degeneration of the lumbar spine and the physicians and ARNP found it was not significant. AR 769-771 (Dr. Ravanpay, MD, Ph.D., Neurosurgery, observes that spine treatment referral will be provided in April 2017 so that plaintiff may be assessed by University of Washington); AR 591-594 (Dr. Chen, Renton-Pain Care Physicians, assessment of lumbar spondylosis, disc bulge at L4-5, mild arthropathy, mild foraminal

narrowing at L5-S1, from MRI taken February 9, 2016); AR 790-794 (Follow-up MRI on October 24, 2016, showing similar results as the previous MRI on February 9, 2016); AR 913-918 (January 2019, ARNP Linda C. Pyke reviews MRI from November 2018 and notes that the findings do not show any back injury or condition that would cause the pain described by plaintiff); AR 931-936 (additional November 2018 notes from ARNP Pike, showing that MRI of plaintiff's spine is inconsistent with the pain described by plaintiff); AR 1126-1140 (MRI reports of November and September, 2018, findings normal, except for mild degenerative changes of lumbar spine).

Because the third reason is supported by the record, any error would be harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

2. Dr. Prodanovic

Plaintiff alleges the ALJ erred by discounting the opinion of Dr. Marina Prodanovic. Dkt. 13 at 8-11. Plaintiff argues the ALJ erred when finding Dr. Prodanovic failed to base the opinion on objective evidence, and when the ALJ made a finding that Dr. Prodanovic's assessment was primarily based on plaintiff's subjective reports of symptoms. Dkt. 13 at 9.

Dr. Prodanovic, who provided chiropractic care to plaintiff, opined on April 10, 2019 that plaintiff would require more than the scheduled breaks of ten minutes or more through the work day; he would also be likely to miss work or leave work early at least two to three days per month due to symptoms of spinal pain; and plaintiff would be likely to experience marked problems with focus and concentration over an extended time. AR 1175. Dr. Prodanovic opined that plaintiff would only be able to sit, stand, or walk for one hour at a time during an eight-hour workday. AR 1173. And, the total time during an

1 entire eight-hour workday that plaintiff would be able to sit, stand, or walk, would be
2 three hours – this total would probably change on a day to day basis. AR 1173. The ALJ
3 stated that Dr. Prodanovic's opinion was "unpersuasive". AR 26.

4       The ALJ's reasons for discounting the opinions of Dr. Prodanovic are supported
5 by the record. Dr. Prodanovic did not rely on MRI reports or objective tests. To the
6 extent Dr. Prodanovic is relying on examinations of plaintiff, the medical opinion does
7 not point to any specific aspects of those examinations – the opinion contains
8 conclusions rather than supporting test results or data from examinations. The
9 examination notes show some signs of spasms and range of motion issues, but do not
10 suggest any specific work-related limitations. AR 1175-76; AR 445-614, 872-899. The
11 ALJ reasonably found the medical opinions of Dr. Symonds, Dr. Staley, and Dr. Rubio
12 to have greater reliability. AR 26. If the ALJ's decision is based on a rational
13 interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle*
14 *v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also, Ghanim*
15 *v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to medical
16 opinions that conflict with treatment notes).

17     B.  The ALJ's consideration of plaintiff's statements regarding symptoms and
18         limitations.

19       Plaintiff asserts that the ALJ erred because: (1) the failed work attempt was not
20 evidence that plaintiff was able to actually perform work; (2) plaintiff's lack of effort to
21 obtain more treatment during certain times was explainable – plaintiff indicated that he
22 was in such terrible condition that he could not get out of bed -- and the record also
23 shows that medical providers did not see plaintiff's worst symptoms; (3) plaintiff's

24

25

1  behavior did not show any indication of malingering, symptom exaggeration, or pain-
2  medication-seeking motivation; (4) plaintiff's non-treatment during some of the time
3  frame is explained by lack of economic resources; and (5) failure to pursue mental
4  health treatment is explained by the symptoms of plaintiff's impairments (e.g.
5  depression) that caused him to use poor judgment about whether and when he needed
6  treatment. Dkt. 13 at 11-15.

7  In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

The ALJ is required to state what testimony he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings when they are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. The ALJ needs to make findings sufficiently specific to allow this Court to conclude that the ALJ rejected the

testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

On the other hand, if affirmative evidence does show malingering, this relieves the ALJ from the burden of providing clear and convincing reasons to discount the claimant's testimony. *Baghoomian v. Astrue*, 319 Fed. App'x 563 (9th Cir. 2009). Instead, the ALJ must give reasons that are specific and legitimate. *See Olivar v. Berryhill*, No. 2:17-CV-00657-DWC, 2017 WL 4857089, at *5 (W.D. Wash. Oct. 27, 2017). The ALJ does not need to make a specific finding of malingering, so long as affirmative evidence in the record shows malingering. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008).

In this case, the ALJ determined that plaintiff's symptoms relating to back pain, anxiety, PTSD, and depression, were supported by documentation showing objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. AR 21, 26-27.

The failed work attempt does not constitute substantial evidence of plaintiff's lack of credibility. The record shows that plaintiff tried to go back to his construction work, but was unable to sustain that employment due to his symptoms. AR 498. With respect to plaintiff's back condition and psychological conditions, the ALJ found that objective findings did not support the degree of limitation plaintiff alleged. AR 17. Inconsistency with objective evidence may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v.*

*Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ lacked support for finding that the objective evidence undermines plaintiff's testimony about his psychological conditions. While the ALJ cited concerns about plaintiff being slow to obtain treatment, it is unclear how these undermine plaintiff's claims of depression, anxiety, PTSD, and resulting limitations, which the record shows are connected with his experiences in wartime as well as other aspects of his life – such as having few resources with which to obtain treatment, having difficulty with transportation to obtain treatment, and the difficulties of taking care of self-care needs during homelessness. AR 808 (opinion of Dr. Dabney); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in context of "diagnoses and observations of impairment"). Symptoms from mental illness may interfere with a patient's ability to understand the need for treatment, or to take action to obtain treatment. *Regennitter v. Commissioner of Social Sec. Admin.,* 166 F.3d 1294, 1299-1300 (9th Cir. 1999).

An ALJ may rely on conservative treatment in discounting a claimant's symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that over-the-counter pain medication is "conservative treatment"). However, "consistent use of Norco, a strong opioid medication, cannot accurately be described as 'conservative' treatment." *Bucknell v. Berryhill*, No. ED CV 18-0261 AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (unpublished) (collecting cases); *see O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) (collecting cases); *Hanes v. Colvin*, 651 F. App'x

703, 706 (9th Cir. 2016) (unpublished) (holding narcotic painkillers, with spinal injections and radiofrequency ablation, not conservative); *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (unpublished) (describing hydrocodone as "strong pain reliever"). *But see Jesus C. v. Berryhill*, No. ED CV 17-2103-PJW, 2018 WL 5984839, at *2 (C.D. Cal. Nov. 13, 2018) (unpublished) (finding treatment conservative where plaintiff was prescribed Oxycodone for only 2 of 27 months during relevant period).

In this case, plaintiff received information from medical providers that he would not qualify to have surgery for his back condition. AR 753-769. A back-pain therapy recommended by the University of Washington was not financially affordable for plaintiff. AR 753. These are legitimate reasons for plaintiff to not pursue further back treatment. Plaintiff was prescribed opiates by Dr. Chen in 2017. AR 591. The record also indicates that plaintiff received physical therapy but could not afford to continue that treatment because his insurance did not cover it. AR 517.

If the claimant had cause for not complying with treatment recommendations, failure to follow up with certain treatment referrals is not a clear and convincing reason to discount the claimant's testimony. *Byrnes v. Shalala,* 60 F.3d 639, 641 (9th Cir. 1995). In addition, if there is not substantial evidence to show that the claimant could reasonably remedy the condition with the treatment at issue—i.e., if the claimant had followed the recommended course of treatment, the condition was reasonably remediable and likely would have been resolved because of the efficacy of that treatment as to the particular claimant—then there is not clear and convincing evidence to discount the claimant's testimony. *Id.*

Harmless error principles apply in the Social Security context. *Molina v. Astrue*,

674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this situation, the errors regarding plaintiff's symptom statements are not harmless. When the record is ambiguous, and the date of onset is uncertain – especially for mental health conditions – the ALJ has a duty to expand the record. *See, DeLorme v. Sullivan,* 924 F.2d 841, 847-849 (9th Cir. 1991). This is particularly important in cases where the plaintiff suffers from mental impairments, "'[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment.'" *DeLorme,* at 849, *quoting* SSR 83-20; *Diedrich v. Berryhill,* 874 F.3d 634, 639 (9th Cir. 2017); *see also, Wellington v. Berryhill,* 878 F.3d 867, 872-876 (9th Cir. 2017).

C. <u>Remand with Instructions for Further Proceedings</u>

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017). In this case, there is ambiguity because upon re-evaluation of plaintiff's testimony, and potentially obtaining additional evidence after expanding the record, the ALJ may decide to re-evaluate the date of onset, or alter the RFC, in light of new information, or may apply a new interpretation of the existing record. *Diedrich v. Berryhill,* 874 F.3d 634, 639 (9th Cir. 2017)

Based on the foregoing discussion, the Court finds the ALJ erred and the errors were harmful. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to re-evaluate the medical evidence, and expand the record to take additional evidence (if such evidence exists) about plaintiff's psychiatric and psychological condition(s). Symptoms may wax and wane in mental health conditions. *Garrison v. Colvin,* 759 F.3d

995, 1017 (9th Cir. 2014), and the date of onset may be difficult to determine. The Commissioner is also directed to re-evaluate plaintiff's testimony.

Dated this 5th day of March, 2021.

Theresa L. Fricke
United States Magistrate Judge